1 | MARK JOSEPH KENNEY (State Bar No. 87345)
mjk@severson.com
2 | MICHAEL G. CROSS (State Bar No. 268999)
mgc@severson.com
3 | SEVERSON & WERSON
A Professional Corporation
4 | One Embarcadero Center, Suite 2600
San Francisco, California 94111
5 | Telephone: (415) 398-3344
Facsimile: (415) 956-0439
6 |
ROBERT J. GANDY (State Bar No. 225405)
7 | rjg@severson.com
SEVERSON & WERSON
8 | A Professional Corporation
The Atrium
9 | 19100 Von Karman Avenue, Suite 700
Irvine, California 92612
10 | Telephone: (949) 442-7110
Facsimile: (949) 442-7118
11 |
Attorneys for Defendants COUNTRYWIDE
12 | HOME LOANS, INC., and RECONTRUST
COMPANY, N.A.
13 |

14 | UNITED STATES DISTRICT COURT

15 | NORTHERN DISTRICT OF CALIFORNIA — SAN JOSE DIVISION

16 |

17 | FAREED SEPEHRY-FARD,

Case No. CV-14-05142

18 | Plaintiff,

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT AS TO COUNTRYWIDE HOME LOANS, INC.**

19 | vs.

20 | SELECT PORTFOLIO SERVICING, INC.,
COUNTRYWIDE HOME LOANS, INC.,
21 | RECONTRUST COMPANY, N.A., THE
BANK OF NEW YORK MELLON, AS
22 | TRUSTEE FOR THE
CERTIFICATEHOLDERS CWALT, INC.
23 | ALTERNATIVE LOAN TRUST 2005-62
MORTGAGE PASS-THROUGH
24 | CERTIFICATES, SERIES 2005-62,
MORTGAGE ELECTRONIC
25 | REGISTRATION SYSTEMS, INC.

Filed concurrently with Request for Judicial Notice

Date:      March 5, 2015
Time:      1:30 p.m.
Crtrm.:   8
Judge:    Hon. Lucy H. Koh

26 | Defendants.

27 |

28 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 5, 2015, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the above-entitled Court, located at 280 South 1st Street, San Jose, California, the Honorable Lucy H. Koh presiding, defendant Countrywide Home Loans, Inc. ("Countrywide") will, and hereby does, move for an order dismissing plaintiff Fareed Sepehry-Fard's complaint with prejudice for failure to state a claim.

This motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Sepehry-Fard's complaint fails to state a claim against Countrywide upon which relief can be granted.  In particular, the federal claims pled in the complaint are barred by the doctrine of *res judicata*, in that Sepehry-Fard litigated the same or similar issues against the same defendants, or defendants in privity with the same defendants, in Case No. 5:12-CV-01260-LHK. In addition, Sepehry-Fard's complaint fails to include a short and plain statement of the claim showing he is entitled to relief under Rule 8(a)(2) of the Federal Rules of Civil Procedure.

This motion is based on this notice of motion and motion, the memorandum of points and authorities that follows, the pleadings and records on file in this action, and upon such other oral and documentary evidence that may be presented at the hearing on this motion.

DATED:  January 29, 2015          Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation


By:      */s/ Michael G. Cross*
              Michael G. Cross

Attorneys for COUNTRYWIDE HOME LOANS, INC.,
and RECONTRUST COMPANY, N.A.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................. 2

III. HISTORY OF LITIGATION RELATED TO 18314 BAYLOR AVENUE ............................. 3

IV. LEGAL STANDARDS ON MOTION TO DISMISS ................................................. 4

V. LEGAL ARGUMENT ......................................................................................... 5

    A.    *Res Judicata* Bars Sepehry-Fard's Federal Claims ................................. 5

        1.    The Claims Are Identical ................................................ 6

        2.    *Sepehry-Fard I* Is A Final Judgment on the Merits ...................... 7

        3.    There Is Privity Between The Parties ........................................ 7

    B.    Each Of Sepehry-Fard's Theories Of Liability Have Been Rejected ...................... 8

        1.    Securitization of Sepehry-Fard's Loan Did Not Render It Unenforceable ................................................................ 8

        2.    Lenders Need Not "Produce The Note" In Order To Foreclose ................... 9

        3.    Sepehry-Fard Lacks Standing To Bring A Robo-Signing Claim ................. 9

        4.    Each Of Sepehry-Fard's Claims Fail Because They Are Based On His Meritless Theories ................................................ 10

    C.    There Is No Basis For Sepehry-Fard's Preemptive Action ..................... 12

    D.    Judicially-Noticeable Facts Disprove Sepehry-Fard's Thesis ................ 13

    E.    Sepehry-Fard's Claims Lack The Coherence Necessary To Provide Notice Of Alleged Wrongs ................................................ 14

VI. CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

CASES

Apao v. Bank of New York,
    324 F.3d 1091 (9th Cir. 2003).................................................................................6

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) .................................................................................4, 14

Benham v. Aurora Loan Services,
    2009 WL 2880232 (N.D.Cal. 2009).......................................................................8

California Trust Co. v. Smead Investment Co.,
    6 Cal.App.2d 432, 435 (1935)................................................................................9

Christopher v. First Franklin Fin'l Corp.,
    2010 WL 1780077 (S.D. Cal. 2010) ......................................................................9

Debrunner v. Deutsche Bank National Trust Co.,
    204 Cal. App.4th 433 (2012)................................................................................12

Fontenot v. Wells Fargo Bank,
    198 Cal.App. 4th 256 (2011)..........................................................................10, 14

Gauvin v. Trombatore,
    682 F.Supp.1067 (N.D. Cal. 1988) .......................................................................14

Gen-Probe, Inc. v. Amoco Corp.,
    926 F.Supp. 948 (S.D. Cal. 1996) ........................................................................14

Gomes v. Countrywide Home Loans, Inc.,
    192 Cal.App.4th 1149 (2011)...............................................................................12

Hafiz v. Greenpoint Mortg. Funding, Inc.,
    652 F.Supp.2d 1039 (N.D.Cal. 2009) .....................................................................8

Hague v. Wells Fargo Bank, N.A.,
    2011 WL 6055759 (N.D. Cal. Dec. 6, 2011) ...........................................................8

Hatch v. Reliance Ins. Co.,
    758 F.2d 409, 415 (9th Cir. 1985).........................................................................6

In re Schimmels,
    127 F.3d 875, 881 (9th Cir. 1997).....................................................................6, 7

*Int'l Union of Operating Engineers-Employers Constr. Industry Pension,*
  *Welfare & Training Trust Funds v. Karr,*
  994 F.2d 1426 (9th Cir. 1993) ........................................................................................6

*Javaheri v. JP Morgan Chase Bank, N.A.,*
  2012 WL 3426278 (C.D. Cal. Aug. 13, 2012) ................................................................9

*Jenkins v. JP Morgan Chase Bank, N.A.,*
  216 Cal.App.4th 497 (2013) ..........................................................................................12

*Jones v. Cmty. Redevelopment Agency of City of Los Angeles,*
  733 F.2d 646 (9th Cir. 1984) ..........................................................................................14

*Labra v. Cal-Western Reconveyance Corp.,*
  2010 WL 889537 (N.D. Cal. 2010) ..................................................................................9

*Lane v. Vitek Real Estate Industries Group,*
  713 F.Supp.2d 1092 (E.D. Cal. 2010) ...........................................................................8, 9

*Missud v. California,*
  2014 WL 3367953 (N.D. Cal. 2014) ................................................................................7

*Moran v. GMAC Mortgage, LLC,*
  2014 WL 3853833 (N.D. Cal. Aug. 5, 2014) ..................................................................9

*Mulato v. WMC Mortg. Corp.,*
  2010 WL 1532276 (N.D. Cal. 2010) ................................................................................8

*Mullis v. United States Bankruptcy Ct.,*
  828 F.2d 1385 (9th Cir. 1987) ..........................................................................................4

*Robertson v. Dean Witter Reynolds, Inc.,*
  749 F.2d 530 (9th Cir. 1984) ............................................................................................4

*Saxon Mortg. Services v. Hillery,*
  2009 WL 2435926 (N.D. Cal. 2009) ................................................................................9

*Siliga v. Mortg. Elec. Registration Sys., Inc.,*
  219 Cal.App.4th 75 (2013) ............................................................................................13

*Southwest Airlines Co. v. Texas Int'l Airlines, Inc.,*
  546 F.2d 84 (5th Cir. 1977) ..............................................................................................7

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001) ............................................................................................4

*State of Idaho Potato Com'n v. G & T Terminal Packaging, Inc.,*
  425 F.3d 708 (9th Cir. 2005) ............................................................................................7

*Steckman v. Hart Brewing*,
   143 F.3d 1293 (9th Cir. 1998) ............................................................................4

*Stewart v. U.S. Bancorp*,
   297 F.3d 953 (9th Cir. 2002) ..............................................................................5

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
   322 F.3d 1064 (9th Cir. 2003) .....................................................................1, 6, 7

*United States v. Liquidators of European Fed. Credit Bank*,
   630 F.3d 1139 (9th Cir. 2011) ............................................................................5

*Wadhwa v. Aurora Loan Servs., LLC*,
   2011 WL 2681483 (E.D. Cal. July 8, 2011) .......................................................8

*Yamaguchi v. United States Dept. of Air Force*,
   109 F.3d 1475 (9th Cir. 1997) ..........................................................................14

*Zadrozny v. Bank of New York Mellon*
   720 F.3d 1163 (9th Cir. 2013) ..........................................................................13

**STATUTES, RULES**

Cal. Civil Code
   § 2924 ...................................................................................................................9

Federal Rules of Civil Procedure
   Rule 8 ...........................................................................................................2, 4, 14
   Rule 12 ................................................................................................................4

# I.  INTRODUCTION

This is the eighth nearly-identical lawsuit in which Fareed Sepehry-Fard has challenged his lenders' and servicers' standing to foreclose on two properties he owns in Saratoga, California, worth about $2.5 million.  It is the fifth suit he has brought in this Court.  It is the fourth suit he has brought regarding this property.  Sepehry-Fard's allegations are rambling and largely incoherent.  But his intentions are unmistakable.  He is wasting the time and resources of his lenders and, more importantly, the time and resources of California's state and federal court systems.

*Res judicata* bars the federal claims Sepehry-Fard brings by way of this suit.  Sepehry-Fard filed a similar lawsuit in 2012.  There, like here, Sepehry-Fard conceded that he had signed promissory notes and deeds of trust encumbering his real property.  And there, like here, he alleged that his debt had been extinguished when his loans were securitized into a trust pool.  As a result, Sepehry-Fard argued there, as here, that he and his lenders were "strangers," that all of the title documents related to the property were robo-signed forgeries, that there was no longer a "true beneficiary" of his deeds of trust, and that neither his lender nor his loan servicer had standing to foreclose.  He further argued there, as here, that the court should order every party claiming to hold a lien on his property to prove their standing; otherwise, their actions were illegal.

This Court dismissed the federal claims made in Sepehry-Fard's 2012 suit, finding that its allegations failed to state a claim upon which relief could be granted.  Although Sepehry-Fard's earlier suit was styled to include only claims of alleged Civil Rights Act violations, that fact is inconsequential to its preclusive effect.  Because "the two suits arise out of the same transactional nucleus of facts," the claims are considered identical for *res judicata* analysis.  *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003).  There is no new transactional nucleus presented in this suit.  Although Sepehry-Fard's loan is now serviced by a new party, his allegations are identical to the ones he has already made, and which have already been dismissed.  For this reason, Sepehry-Fard's federal claims should be dismissed.

In addition, because each of Sepehry-Fard's remaining claims is based on either his "produce-the-note," securitization, or robo-signing theory, they each fail as well.  Moreover,

1   Sepehry-Fard cannot sue to preemptively challenge foreclosure.  Even if he could, the documents

2   he signed at his loan's closing clearly show that his lender is acting within its rights.  Finally, if

3   this Court cannot dismiss on these substantive grounds, it should find that Sepehry-Fard's

4   complaint fails to meet Rule 8's requirement that he provide a short and plain statement of his

5   claims showing he is entitled to relief.

6        For these reasons, which will be set forth in greater detail below, defendant Countrywide

7   Home Loans, Inc., respectfully moves this Court for an order dismissing Sepehry-Fard's lawsuit

8   with prejudice.  Fareed Sepehry-Fard has had his day in court—numerous times.  There is no need

9   to waste more resources litigating meritless allegations from a borrower who simply wants to live

10  in multiple houses for free.

11  ## II.  STATEMENT OF FACTS

12       Fareed Sepehry-Fard acquired sole title to the real property at 18314 Baylor Avenue, in

13  Saratoga, California, in May 2004.  In September 2005, Sepehry-Fard refinanced his property with

14  an $808,800.00 loan from Countrywide Home Loans, Inc.  The repayment of the loan was secured

15  by a deed of trust encumbering the property.  RJN, Ex. 1.  Sepehry-Fard simultaneously obtained a

16  second loan from Countrywide Bank for $167,000.00 and secured the repayment of that loan with

17  a second deed of trust encumbering the property.  RJN, Ex. 2.

18       In March 2010, Mortgage Electronic Registration Systems, Inc. ("MERS"), the beneficiary

19  under the first deed of trust, recorded an assignment of the deed of trust to be recorded, through

20  which The Bank of New York Mellon FKA The Bank of New York, as Trustee, became the

21  beneficiary.  RJN, Ex. 3.  In September 2012, MERS recorded an assignment of the second deed

22  of trust, through which The Bank of New York Mellon, as Trustee, became the beneficiary.  RJN,

23  Ex. 4.  At some point, Sepehry-Fard paid off the second mortgage.  A full reconveyance was

24  recorded in September 2012.  RJN, Ex. 5.

25       Sepehry-Fard admits that he has stopped making his mortgage payments.  Compl. ¶ 196.

26  Although a notice of default was recorded in February 2010 (RJN, Ex. 6), it was rescinded in

27  August 2010 (RJN, Ex. 7).  There are no foreclosure actions pending against this property.

28

### III.  HISTORY OF LITIGATION RELATED TO 18314 BAYLOR AVENUE

Sepehry-Fard filed his first complaint related to his 18314 Baylor Avenue property in September 2011.  The complaint was brought in the California superior court against, amongst others, Sepehry-Fard's lender, Bank of New York Mellon, as Trustee, and his then-servicer, Bank of America.  After defendants' demurrer to the original complaint was sustained, Sepehry-Fard filed an amended complaint.  RJN, Ex. 8.  Defendants again demurred.  The Santa Clara Superior Court sustained defendants' demurrer to the first amended complaint.  RJN, Ex. 9.  The court reviewed and rejected Sepehry-Fard's two theories of liability—that securitization of a mortgage renders the loan unenforceable and that a borrower may challenge a foreclosing party's standing to foreclose.  *Id*. at 2.  In so ruling, the trial court found Sepehry-Fard's causes of action for declaratory relief, negligence, quasi-contract, RESPA, FDCPA, UCL, and accounting defective.  *Id*. at 3-5.  Although the court granted Sepehry-Fard leave to amend some of his claims, he chose, rather, to appeal.  That appeal—case number H039493— is fully briefed and awaiting a ruling by the Sixth Appellate District.

Sepehry-Fard also sued in federal district court in March 2012, which he amended after defendants' first motion to dismiss was granted.  RJN, Ex. 10.  That suit was also against, *inter alia*, Bank of New York Mellon, as Trustee, and Bank of America.  Although styled as a Civil Rights Act complaint, Sepehry-Fard's main allegation was that "Defendants are third party strangers to his alleged mortgage loan and have no ownership interest or any relationship with Plaintiff entitling them to collect payments or declare a default."  *Id*. at 6.  This claim was based, he stated, on the fact that when his loan was securitized into a mortgage trust pool, " 'true sales' never took place due to the failure to follow the basic legal requirements for the transfer of a negotiable instrument and thereby, Defendants did not acquire any legal, equitable, and pecuniary interest in Plaintiff's Note and Mortgage, and have no right to collect mortgage payments."  *Id*. at 16.  He demanded, "this court must order Defendants to show the money trail, GAAP accounting, true double entry account general ledger to show that they in fact loaned money to Plaintiff with all the valid title assignments and indorsements as required under the PSA and prove that the signatures are authenticated and are not forged."  *Id*. at 33.

1   The district court granted defendants' motion to dismiss Sepehry-Fard's federal claims, but

2   declined to exercise supplemental jurisdiction over his state law claim.  *Sepehry-Fard v. Bank of*

3   *New York Mellon, N.A.* ("*Sepehry-Fard I*"), 2013 WL 4030837, at *9 (N.D. Cal. Aug. 5, 2013).

4   The court denied Sepehry-Fard's subsequent motion to alter or amend judgment.  *Sepehry-Fard I*,

5   2014 WL 460895 (N.D. Cal. Feb. 3, 2014).  Sepehry-Fard appealed, and the Ninth Circuit

6   affirmed the trial court's ruling.  *Sepehry-Fard I*, --- Fed.Appx. ----, 2014 WL 7231516 (9th Cir.

7   Dec. 18, 2014).

8   Sepehry-Fard filed a second suit in federal district court in December 2013.  RJN, Ex. 11.

9   There, Sepehry-Fard sought only to quiet title to his property.  *Id.*  However, the Court dismissed

10   the case *sua sponte* on the ground it lacked subject matter jurisdiction over its single, state law

11   claim.  RJN, Ex. 12.

## IV.  LEGAL STANDARDS ON MOTION TO DISMISS

13   Federal Rule of Civil Procedure 12(b)(6) provides that a pleading may be challenged and

14   dismissed for failing to "state a claim upon which relief can be granted."  Dismissal is warranted

15   under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or fails to plead facts

16   essential to state a cognizable legal theory.  *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d

17   530, 534 (9th Cir. 1984).

18   Federal Rule of Civil Procedure 8 states that a civil complaint "must contain … a short and

19   plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

20   On a motion to dismiss, the Court accepts as true only the facts properly pled in the

21   complaint; courts are not bound to accept as true "a legal conclusion couched as a factual

22   allegation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

23   Facts subject to judicial notice may be considered on a motion to dismiss.  *Mullis v. United*

24   *States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).  While the Court accepts as true the

25   well-pled facts of a complaint when deciding a motion to dismiss, it need not accept as true a

26   conclusory allegation that directly contradicts a judicially noticeable fact.  *See, e.g.*, *Sprewell v.*

27   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The court is "not required to accept as

28   true conclusory allegations which are contradicted by documents referred to in the complaint."

1   *Steckman v. Hart Brewing*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

2                                    **V.  LEGAL ARGUMENT**

3        Fareed Sepehry-Fard's federal claims should be dismissed as to Countrywide on the

4   grounds of *res judicata*.  Although Sepehry-Fard's 13 federal claims are not identical in name to

5   those he raised in 2012, his allegations are—to the extent they can be understood—identical to

6   those already evaluated and dismissed by this Court.

7        In the alternative, the complaint should be dismissed for the same reasons already

8   articulated by this Court and the Santa Clara County Superior Court.  The entire complaint is

9   based on Sepehry-Fard's contention that when his loan was securitized his lender's interest in the

10  promissory note and deed of trust were somehow rendered unenforceable.  Compl. ¶¶131-32.

11  Relatedly, Sepehry-Fard alleges that his lender is required to "provide proof of claim against the []

12  Deed of Trust, else release their claim."  Compl. ¶ 93.  And Sepehry-Fard often complains about

13  alleged robo-signing of documents.  Compl. ¶¶ 152-53.  None of these theories has merit.  And

14  because all of Sepehry-Fard's individual claims are based on one or both of these theories, each

15  fails as well.

16  **A.    *Res Judicata* Bars Sepehry-Fard's Federal Claims**

17       In general, "[r]es judicata, or claim preclusion, prohibits lawsuits on any claims that were

18  raised or could have been raised in a prior action."  *Stewart v. U.S. Bancorp,* 297 F.3d 953, 956

19  (9th Cir. 2002) (emphasis omitted).  To determine the *res judicata* effect of earlier litigation, the

20  court looks to whether "there is (1) an identity of claims, (2) a final judgment on the merits, and

21  (3) privity between parties."  *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d

22  1139, 1150 (9th Cir. 2011).

23       Those three prongs are satisfied here.  First, although the claims Sepehry-Fard made in his

24  earlier suit were not identical to the 13 federal claims he recites here, the issue raised by the claims

25  is identical.  Because the claims could have been raised in Sepehry-Fard's previous suit, they are

26  considered identical for *res judicata* purposes.  Second, a final judgment has been issued against

27  Sepehry-Fard on the issues raised.  Third, there is privity between the parties to *Sepehry-Fard I*

28  and this suit.

### 1.	The Claims Are Identical

In *Sepehry-Fard I*, only two federal claims were raised.  Both dealt with whether Sepehry-Fard's lender and servicer were infringing on his civil rights by foreclosing on him.  To support his claims, Sepehry-Fard alleged that the assignment between MERs and Bank of New York was fraudulent, in particular because the signatures of the notaries notarizing the assignments were forged.  RJN, Ex. 10 at 25-30.  Sepehry-Fard also alleged that, to the extent defendants sought to collect upon the promissory notes, they were attempting to collect upon a loan to which they were not the "true beneficiary." *Id.* at 30.  Sepehry-Fard also alleged that defendants were illegally attempting to foreclose on his property. *Id.* at 36.

In the present suit, Sepehry-Fard brings federal claims that include TILA, RESPA, and RICO violations.  Even though these new claims are not identical with the federal claims raised in *Sepehry-Fard I*, they are still precluded.  "Identity of claims exists when two suits arise from the same transactional nucleus of facts." *Tahoe-Sierra*, 322 F.3d at 1078 (internal quotation marks omitted).  "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Int'l Union of Operating Engineers-Employers Constr. Industry Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) (internal quotation marks omitted).  "Newly articulated claims based on the same nucleus of facts may still be subject to a *res judicat*a finding if the claims could have been brought in the earlier action." *Tahoe-Sierra*, 322 F.3d at 1078.  Without such a rule, one of primary goals of *res judicata*—the prevention of piecemeal litigation—would be without effect. *Hatch v. Reliance Ins. Co*., 758 F.2d 409, 415 (9th Cir. 1985).

Although the 13 federal claims brought here are facially different from the two Civil Rights Act claims alleged in *Sepehry-Fard I*, they stem from the same transactional nucleus of facts, and are therefore barred.  Now, as before, Sepehry-Fard contends that all title documents recorded with the Santa Clara County Recorder's office were forged. *See, e.g*., Compl. at 50-52.  Now, as before, Sepehry-Fard contends that defendants are not the true beneficiaries of the deeds of trust. *See, e.g*., *id*. at 27.  And now, as before, Sepehry-Fard contends that defendants are

1   threatening to foreclose on him illegally.  *See, e.g.*, *id*. at 3.  Because Sepehry-Fard's 13 newly-

2   articulated claims stem from the same nucleus of facts he brought before this Court in 2012, his

3   new claims are precluded.  Accordingly, they should be dismissed.

4         **2.**    *Sepehry-Fard I Is A Final Judgment on the Merits*

5        "An involuntary dismissal generally acts as a judgment on the merits for the purposes of

6   *res judicata* …."  *In re Schimmels*, 127 F.3d at 884.  In *Sepehry-Fard I*, the court granted the

7   defendants' motion to dismiss after considering the merits of Plaintiff's claim.  *See Sepehry-Fard*

8   *I*, at *6-*7.  In so doing, the court held that "[a]s a general rule, nonjudicial foreclosure sales do

9   not involve sufficient state action to support a Section 1983 claim."  *Id*. at *6 (citing *Apao v. Bank*

10  *of New York*, 324 F.3d 1091, 1095 (9th Cir. 2003)).  Based on this, the Court dismissed Fard's two

11  federal claims with prejudice.  *Id*. at *7.  Because *Sepehry-Fard I* was involuntarily dismissed, it

12  reached adjudication on the merits.

13        **3.**    **There Is Privity Between The Parties**

14       The Ninth Circuit has defined privity in the *res judicata* context as "a legal conclusion

15  'designating a person so identified in interest with a party to former litigation that he represents

16  precisely the same right in respect to the subject matter involved.' "  *In re Schimmels*, 127 F.3d at

17  881 (quoting *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977)).

18  Although Countrywide was not a named defendant in *Sepehry-Fard I*, it was the original lender on

19  plaintiff's loan.  Bank of New York Mellon, as Trustee, which was a named defendant in *Sepehry-*

20  *Fard I*, purchased the loan from Countrywide after it was funded.  Therefore, privity exists

21  between Countrywide and Bank of New York Mellon, as Trustee.

22       Even if there were not privity, "[t]he Ninth Circuit has recognized the validity of defensive,

23  nonmutual collateral estoppel, where a defendant precludes a plaintiff from relitigating an issue

24  that the plaintiff had previously litigated unsuccessfully against a different party."  *Missud v.*

25  *California*, 2014 WL 3367953 (N.D. Cal. 2014) (citing *State of Idaho Potato Com'n v. G & T*

26  *Terminal Packaging, Inc.*, 425 F.3d 708, 713 n. 3 (9th Cir. 2005)).  Privity therefore exists if there

27  is sufficient commonality of interests between the parties.  *Tahoe-Sierra*, 322 F.3d at 1081.  The

28  interests of Sepehry-Fard's current lender—Bank of New York Mellon, as Trustee—are nearly

1  identical with, and certainly common to, his original lender—Countrywide.  Therefore, this prong

2  is satisfied.

3  **B.      Each Of Sepehry-Fard's Theories Of Liability Have Been Rejected**

4        Even if the Court does not find Sepehry-Fard's federal claims barred by *res judicata*, or if

5  it exercises jurisdiction over his state claims, it should still find each claim meritless.  Each is

6  premised on one or more theories roundly rejected by California courts:  (1) that securitization

7  discharged Sepehry-Fard's debt, (2) that defendants lack authority to foreclose, or (3) that robo-

8  signed documents are void.  For the reasons set forth below, each of these theories fails as a matter

9  of law.  Because each of Sepehry-Fard's claims depends on one or more of these theories, they all

10  fail.  The entirety of Sepehry-Fard's suit should therefore be dismissed.

11        **1.      Securitization of Sepehry-Fard's Loan Did Not Render It Unenforceable**

12        The most cohesive line of argument that can be found in Sepehry-Fard's complaint comes

13  on page 39.  There, Sepehry-Fard claims that "once a loan is securitized it is permanently

14  converted into a stock" that is held by the Real Estate Mortgage Investment Conduit (REMIC).

15  Compl. ¶ 131.  After that occurs, if a borrower defaults, the REMIC "write[s] off the debt and

16  receives a tax credit for the write off."  *Id*. ¶ 132.  "Therefore, the debt is discharged.  The Plaintiff

17  alleges that the debt has been discharged in full."  *Id*. ¶ 133.

18        This argument appears to ground the rest of Sepehry-Fard's complaint.  It explains why he

19  repeatedly states he and his lender are "strangers" and why the assignment of deed of trust, which

20  seem to indicate that he still owes money on his loan, is a forgery.  But Sepehry-Fard's contention

21  is of no consequence.  The securitization of a loan does not render it unenforceable.  "The

22  argument that parties lose their interest in a loan when it is assigned to a trust pool has [ ] been

23  rejected by many district courts."  *Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d

24  1092, 1099 (E.D. Cal. 2010) (citing *Benham v. Aurora Loan Services*, 2009 WL 2880232 at *3

25  (N.D. Cal. 2009) and *Hafiz v. Greenpoint Mortg. Funding, Inc*., 652 F.Supp.2d 1039, 1042-43

26  (N.D.Cal. 2009); *see also Mulato v. WMC Mortg. Corp*., 2010 WL 1532276, at *2 (N.D. Cal.

27  2010) (rejecting Plaintiff's claim that securitization of her mortgage note deprived defendants of

28  standing to foreclose); *Hague v. Wells Fargo Bank, N.A*., 2011 WL 6055759, at *6 (N.D. Cal.

Dec. 6, 2011) ("To the extent that Plaintiffs' claims rely on the securitization of the loan . . . into a mortgage-backed security, there is no merit to the contention that securitization renders the lender's loan in the property invalid."); *Wadhwa v. Aurora Loan Servs., LLC*, 2011 WL 2681483, at \*4 (E.D. Cal. July 8, 2011) ("To the extent the court comprehends this position—apparently suggesting the assignment of the note to a Real Estate Mortgage Investment Conduit (REMIC) renders any interest in the property other than plaintiffs' somehow invalid—this position has been rejected by numerous courts and plaintiffs have provided no authority suggesting why this court should decide otherwise.").  Sepehry-Fard cannot assert a claim based on the theory that securitization rendered his mortgage unenforceable. Therefore, his claims based on this theory fail.

### 2. Lenders Need Not "Produce The Note" In Order To Foreclose

Sepehry-Fard also argues that unless his lender can produce the promissory note, as well as "show the money trail (from origination to present day) to show that they in fact loaned money to Plaintiff," they have no standing to either collect payments or foreclose.  Compl. ¶ 82.  However, this "produce the note" theory is simply a fallacy that California courts have never accepted.  *See California Trust Co. v. Smead Investment Co.*, 6 Cal.App.2d 432, 435 (1935).  Civil Code Sections 2924 *et seq*. do not require the person initiating foreclosure to have physical possession of the promissory note which the deed of trust secures.  Cal. Civ. Code § 2924(a)(1).  California law is clear that the non-judicial foreclosure statute "broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure.  Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale."  *Lane v. Vitek*, 713 F. Supp. 2d at 1099.  As such, courts have repeatedly rejected claims challenging foreclosures because of the purported separation of the note and deed of trust.  *Christopher v. First Franklin Fin'l Corp.*, 2010 WL 1780077, at \* 2-3 (S.D. Cal. 2010) ; *Labra v. Cal-Western Reconveyance Corp.*, 2010 WL 889537, at \* 12-15 (N.D. Cal. 2010); *Saxon Mortg. Services v. Hillery*, 2009 WL 2435926, at \* 4-5 (N.D. Cal. 2009).

### 3. Sepehry-Fard Lacks Standing To Bring A Robo-Signing Claim

Although robo-signing is only mentioned explicitly in Sepehry-Fard's 25th cause of action, it pervades the earlier parts of his complaint and appears to be one of the bases for his claims.  *See,*

*e.g.*, Compl. ¶¶ 64, 70, and 152-156.   However, the "robo-signing" of documents in the "transfer process does not itself constitute harm to the borrower because it does not affect the foreclosure, which is the only injury suffered by the homeowner."  *Moran v. GMAC Mortgage, LLC*, 2014 WL 3853833, at *4 (N.D. Cal. Aug. 5, 2014).  Therefore, Sepehry-Fard lacks standing to assert a cause of action based on robo-signing.  *Id.*; *see also Javaheri v. JP Morgan Chase Bank, N.A.*, 2012 WL 3426278, at *7 (C.D. Cal. Aug. 13, 2012) ("While the allegation of robo-signing may be true, the Court ultimately concludes that [Plaintiff] lacks standing to seek relief under such an allegation …. [T]he only injury [Plaintiff] alleges is the pending foreclosure on his home, which is the result of his default on his mortgage. The foreclosure would occur regardless of what entity was named as trustee, and so [Plaintiff] suffered no injury as a result of this substitution."); *Fontenot v. Wells Fargo Bank*, 198 Cal.App.4th 256, 272 (2011) ("If [defendant] indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss ….").

> ### 4. Each Of Sepehry-Fard's Claims Fail Because They Are Based On His Meritless Theories

Despite being pled as 32 different claims, Sepehry-Fard's complaint is based entirely on the three theories explained above:  (1) that his debt was extinguished when his loan was securitized, (2) that his lender must prove its status before foreclosing, or (3) that robo-signed documents are void.  Because none of those theories offer support for his claims, they each fail.

Sepehry-Fard's self-dealing claim (Claim 2) is based on his allegation that defendants filed forged instruments and "none of the Defendants are a beneficiary."  Compl. ¶ 210.  His UCL claims (Claims 3 and 31) are based on Sepehry-Fard's contentions that "there was not and is not any debt owed" (Compl. ¶ 215) and that "no payment was and is due any of the Defendants" (*id.* ¶ 348). *See also id.* ¶ 178 (UCL claims premised on allegation that defendants "sen[t] bills to Plaintiff when they knew there was no amount due to them").  Sepehry-Fard's FDCPA claim (Claim 4) is based on his allegation that "no money was due" to Countrywide.  Compl. ¶ 165.  Sepehry-Fard's RICO claims (Claims 5-9) are all based on his contention he does not owe defendants any money.  *See, e.g.*, Compl. ¶ 231 (alleging Countrywide collected money to which

it was "not entitled"), Compl. ¶ 236 (alleging that "none of the Defendants are a party to the alleged transactions which they falsely content [sic] place"), Compl. ¶ 239 (alleging that defendants are "demanding payments to [sic] Plaintiff on unsubstantiated debt"), Compl. ¶ 245 (contending that no defendant is the "holder in due course" of his loan), and Compl. ¶¶ 247-249 (basing this claim on earlier RICO claims). Sepehry-Fard's § 1981 claim (Claim 10) is based on his claim he received no money from Countrywide. Compl. ¶ 251. Sepehry-Fard's § 1982 claim (Claim 11) is based on his assertion that his debt is "unsubstantiated." Compl. ¶ 255. Sepehry-Fard's accounting claim (Claim 12) is based on his claim that no money is owed to Countrywide because they did not invest "a bent penny" (Compl. ¶ 262) and his debt is "unsubstantiated" (*id*.¶ 263). Sepehry-Fard's TILA claim (Claim 13) is based on his contention that defendants did not truly loan money to him. Compl. ¶ 266; *see also* Compl. ¶¶ 163-64 (basing TILA claim on contention that "none of the alleged Defendants at any time were lenders," but were "pretender lenders" because his loan was not table funded). Sepehry-Fard's RESPA claim is based on his contention that defendants did not loan him money. Compl. ¶ 271; *see also* Compl. ¶ 162 (RESPA claim based on belief that Countrywide did not "risk a bent penny in this deal"). Sepehry-Fard's conversion claim (Claim 15) is based on his belief that Countrywide never loaned him money but converted it to Countrywide's own use. Compl. ¶ 274. Sepehry-Fard's breach of contract claim (Claim 16) is based on his contention that "there is no loan." Compl. ¶ 278. Sepehry-Fard's economic interference claims (Claims 17 and 25) are based on his contention that "there was and there is no relationship between Plaintiff and any and all Defendants" (Compl. ¶ 284) and "there is absolutely no relationship between any of the Defendants, Plaintiff and Plaintiff's real property" (Compl. ¶ 317). Sepehry-Fard's IIED claim (Claim 18) is premised on his belief that "no money is due to any of the Defendants." Compl. ¶ 287. Sepehry-Fard's fraud claim (Claim 19) is based on his contention that "there is absolutely no relationship between any of the Defendants and Plaintiff." Comp. ¶ 292. Sepehry-Fard's racketeering and mail fraud claim (Claim 20) is also based on his claim that "there is no relationship between any of the Defendants and Plaintiff." Compl. ¶ 295. Sepehry-Fard's aiding and abetting claims (Claims 21-23) are derivative of his other claims that the "transactions never happened" (Compl. ¶ 299), that "there is

no relationship between any of the alleged Defendants and Plaintiff" (Compl. ¶ 303), and that

"Plaintiff never borrowed a single cent from any of the alleged Defendants" (Compl. ¶ 307).

Sepehry-Fard's intentional tort claim (Claim 24) is based on his allegations that the "transactions

never happened" (Compl. ¶ 313) and that Countrywide did not "invest[ ] a single cent into this so

called deal" (Compl. ¶ 314). Sepehry-Fard's unjust enrichment claim (Claim 26) is based on his

claim that the money he has paid on his mortgage "do[es] not belong to any of the Defendants"

(Compl. ¶ 324) and the debt is "unsubstantiated" (Compl. ¶ 325). Sepehry-Fard's IRS

whistleblower claim (Claim 27) is based on his unsupported allegation that unnamed defendants

sold his promissory note multiple times without paying taxes (Compl. ¶ 329) and that the trust

pool was not set up properly (Compl. ¶ 330). Sepehry-Fard's attorneys' fee claim (Claim 28), to

the extent it can be understood, appears to be based on his belief that his other causes of action

(each of which is based on his contention that his debt was forgiven when his loan was

securitized) affects millions of Americans and will result "in the enforcement of an important right

affecting the public interest." Compl. ¶ 224; *see also id.* ¶182. Sepehry-Fard's securities fraud

claim (Claim 29) is based on his contention he has paid money he does not owe. Compl. ¶ 337.

Sepehry-Fard's quiet title claim (Claim 30) is based on his contention that because there is no

legal relationship between the parties: "Defendants have no legal rights to cloud the title to

Plaintiff's real property." Compl. ¶ 341. Sepehry-Fard's ultra vires claim (Claim 32) is based on

his idea that when defendants continued to insist that his loan existed, and forged certain

documents, they acted beyond the scope of their powers. Compl. ¶ 352.

**C.      There Is No Basis For Sepehry-Fard's Preemptive Action**

Not only are Sepehry-Fard's claims meritless because they are based on legally incorrect

theories, he is precluded from bringing this preemptive action to challenge his lender's standing in

the first place. For this reason, as well, his suit should be dismissed.

"California courts have refused to delay the nonjudicial foreclosure process by allowing

trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of

a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." *Jenkins v.*

*JP Morgan Chase Bank, N.A.*, 216 Cal.App.4th 497, 511 (2013) (citing *Debrunner v. Deutsche*

*Bank National Trust Co.*, 204 Cal.App.4th 433, 440-442 (2012) and *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 1154-1157 (2011)).  As California courts have repeatedly held, "nowhere does the [nonjudicial foreclosure] statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action."  *Gomes*, 192 Cal.App.4th at 1155.  "The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures."  *Id.*

Instead of targeting specific misconduct in the nonjudicial foreclosure process, "a pre-emptive suit seeks to create an additional requirement for the foreclosing party, apart from the comprehensive statutory requirements, by requiring the foreclosing party to demonstrate in court that it is [or was] authorized to initiate a foreclosure."  *Siliga v. Mortg. Elec. Registration Sys., Inc.*, 219 Cal.App.4th 75, 82 (2013).  However, allowing such a suit "would unnecessarily 'interject the courts into [the] comprehensive nonjudicial scheme' … and 'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy.' "  *Id.* at 82-83 (citations omitted).

Sepehry-Fard's complaint, and each of the claims within it, essentially aims to force defendants to prove they have authority to foreclose.  But Sepehry-Fard alleges no specific factual basis supporting his speculation that a pending foreclosure is unauthorized.  Rather, he attempts to plug this hole by alleging that his debt was forgiven when his loan was transferred a the trust pool.  That is insufficient.

**D.    Judicially-Noticeable Facts Disprove Sepehry-Fard's Thesis**

Sepehry-Fard's claims also fail because judicially-noticeable facts disprove his theory that defendants lack authority to foreclose.  The deed of trust on Sepehry-Fard's senior mortgage named MERS as beneficiary, solely as nominee for the lender.  RJN, Ex. 1 ¶ E.  It also provided that MERS could exercise all interests and rights held by the lender and the lender's successors and assigns.  *Id.* at 4 (paragraph starting "TOGETHER WITH …").  Paragraphs 20 of the deed of trust explained that Sepehry-Fard's note and deed of trust could be sold one or more times without

notice.  *Id*. at 13.  This is exactly what happened.  In 2010, MERS executed an assignment of deed of trust, assigning its interest in the senior loan to Bank of New York Mellon, as Trustee.[1]  RJN, Ex. 3.

These judicially-noticeable facts disprove Sepehry-Fard's contrary allegations that defendants lack the authority to foreclose.  *Zadrozny v. Bank of New York Mellon* 720 F.3d 1163, 1168-70 (9th Cir. 2013).  Sepehry-Fard agreed in the deed of trust that MERS could exercise any rights held by the lender or the lender's successors or assigns.  The recorded title documents show that MERS assigned its interest in the deed of trust to the Bank of New York.  These facts are proper subjects for judicial notice.  *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 265 (2011).  Because the foreclosure traces back to Sepehry-Fard's grant of authority to MERS to exercise the rights of the lender and the lender's successors and assigns, defendants are authorized to foreclose whether there was a defect in the loan's securitization or not.

**E.      Sepehry-Fard's Claims Lack The Coherence Necessary To Provide Notice Of Alleged Wrongs**

It is axiomatic that a plaintiff plead a claim with "facial plausibility" that "allow[s] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.  In addition, the Federal Rules of Civil Procedure require a pleading to give a defendant "fair notice" of the claim being asserted and the "grounds upon which it rests."

---

[1]      Sepehry-Fard may argue in opposition that the recordation of the assignment of deed of trust in 2010 reveals that his loan was not timely assigned to the trust pool.  However, that argument misapprehends the nature of deed of trust assignments.

> [S]ince the assignment of the debt (the promissory note), as opposed to the security (the deed of trust) commonly is not recorded, the lender could have assigned the note to the beneficiary in an unrecorded document not disclosed to plaintiffs.

(*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1506, citing *Fontenot v. Wells Fargo Bank* (2011) 198 Cal.App.4th 256, 272.)

The recordation of MERS's assignment of the deed of trust in 2010 reveals nothing about when Sepehry-Fard's loan was actually assigned to the Bank of New York Mellon, as Trustee.  It simply reveals the date the assignment was recorded.

MOTION TO DISMISS

*Yamaguchi v. United States Dept. of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997); Fed. R. Civ. P. 8(a)(2) (requiring that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief").  Accordingly, "[t]he plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Cmty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotation marks omitted).  Furthermore, where "all defendants are lumped together in a single, broad allegation," without "any specificity [of] how each …defendant allegedly" committed illegal acts, the plaintiff's complaint fails to put defendants on notice of the claims asserted against them.  *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988); *Gen-Probe, Inc. v. Amoco Corp.*, 926 F.Supp. 948, 961 (S.D. Cal. 1996) (holding that "confusion of which claims apply to which defendants would require that the complaint be dismissed").

Countrywide has tried to understand Sepehry-Fard's complaint.  To the best it has been able to grasp plaintiff's argument, it fails to state a claim.  However, if this Court can construe the complaint so Sepehry-Fard has stated a claim, Countrywide would still ask the Court to require Sepehry-Fard to revise the complaint to provide Countrywide clearer notice of the claims being advanced against it.

## VI.  CONCLUSION

For the reasons set forth above, defendant Countrywide Home Loans, Inc. respectfully asks this Court to grant its motion to dismiss.


DATED:  January 29, 2015                    Respectfully submitted,

                                            SEVERSON & WERSON
                                            A Professional Corporation


                                            By:   ___*/s/ Michael G. Cross*___
                                                     Michael G. Cross

                                            Attorneys for COUNTRYWIDE HOME LOANS, INC.,
                                            and  RECONTRUST COMPANY, N.A.